UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA ANN BOWERS,

                Plaintiff,

v.                                                                                              5:16-CV-1392
                                                                                                (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                                              OF COUNSEL:

OLINKSY LAW GROUP                                                HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                              GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 12.).

Currently before the Court, in this Social Security action filed by Lisa Ann Bowers ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1960. (T. 61.) She completed high school. (T. 165.) Generally, Plaintiff's alleged disability consists of back pain, arthritis in her back, high blood pressure, irritable bowel syndrome ("IBS"), kidney impairment, lupus, depression and anxiety. (T. 61-62.) Her alleged disability onset date is March 30, 2012. (T. 62.) Her date last insured is December 31, 2017. (T. 22.)[1] She previously worked as a quality assurance inspector. (T. 61.)

### B. Procedural History

On June 17, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 70.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 10, 2015, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke. (T. 41-60.) On March 16, 2015, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 17-33.) On September 21, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

---

[1] Elsewhere in the record Plaintiff's date last insured is listed as December 31, 2016. (T. 60.)

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 22-30.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2017 and Plaintiff had not engaged in substantial gainful activity since March 30, 2012. (T. 22.) Second, the ALJ found that Plaintiff had the severe impairment of "a slight limitation of motion in the lumbar spine." (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 27.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work and in addition could sit for six hours and stand/walk for six hours with normal breaks. (*Id.*)[2] Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 29-30.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC was not supported by substantial evidence. (Dkt. No. 9 at 7-9 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the step five determination was not supported by substantial evidence. (*Id.* at 9-10.)

### B.   Defendant's Arguments

---

[2]   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

In response, Defendant makes one argument. Defendant argues the ALJ's determination was supported by substantial evidence. (Dkt. No. 10 at 6-8 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV. ANALYSIS**

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1)[3]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statements about what Plaintiff can still do, provided by any medical sources. *Id.* at §§ 404.1527(d), 404.1545(a)(3), 404.1546(c).

As an initial matter, the medical record in this case is sparse. Consultative examiner, Elka Lorensen, M.D., provided the only medical opinion in the record regarding Plaintiff's physical functional abilities. Plaintiff's counsel stated at the hearing that despite requesting a treating source statement, none were received. (T. 44-45.) Counsel indicated that nothing was outstanding and the record was complete. (*Id.*) The record also contains a psychiatric consultative examination and medical source statement. (T. 235-238.) Although the medical record regarding Plaintiff's physical impairments was reviewed by a single decision maker ("SDM"), there was no review by a non-examining State agency medical examiner. (T. 61-68.) A non-examining State agency medical examiner reviewed the record pertaining to Plaintiff's mental impairments and mental health treatment. (*Id.*)

Besides the physical and mental consultative examinations, the record contains treatment notations from Plaintiff's treating source, Hasan Zakariyya, M.D. (T. 219-226,

---

[3] Effective March 27, 2017 many of the Regulations and SSRs cited herein have been amended. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

6

241-250.) Although the treatment notations do not contain notations of functional abilities, they do contain physical examinations and assessments.

On June 29, 2011, Plaintiff complained of increased stress at work and uncontrolled hypertension. (T. 250.) Dr. Zakariyya noted on exam Plaintiff had clear lungs, tenderness in her lower abdomen, no edema, and no sensory or motor deficits. (*Id.*) Treatment notations dated February 4, 2013 noted Plaintiff had "[a] lot of stress" because she lost her job. (T. 249.) Dr. Zakariyya noted on exam Plaintiff had clear lungs, no tenderness in her abdomen, no edema, and no sensory or motor deficits. (*Id.*) Dr. Zakariyya assessed Plaintiff with hypertension. (*Id.*) Treatment notations dated March 20, 2013, September 9, 2013, and September 23, 2013, all stated Plaintiff felt better since starting antihypertensive medication. (T. 246-248.) Physical exam results on those dates were the same as in February of 2013 and Plaintiff was assessed with hypertension. (*Id.*)

On January 28, 2014 Plaintiff complained of wheezing, ear pain, congestion, post nasal drip, and weight gain. (T. 245.) Dr. Zakariyya noted on exam Plaintiff had clear lungs, no tenderness in her abdomen, no edema, and no sensory or motor deficits. (*Id.*) Dr. Zakariyya assessed Plaintiff with hypertension and urinary incontinence. (*Id.*) On June 13, 2014, Plaintiff complained of fatigue, "altered bowel habits," and swelling in her legs. (T. 244.) On examination, Dr. Zakariyya noted Plaintiff's lungs were clear, her abdomen was soft, there was no edema in her lower extremities, and she had no motor or sensory deficit. (*Id.*) Dr. Zakariyya assessed Plaintiff with hypertension and urinary incontinence, and recommended a gastrointestinal ("GI") consult. (*Id.*) On September 8, 2014, Plaintiff complained of constipation with diarrhea and swelling in her legs. (T.

243.)  A physical exam showed no edema, and no sensory or motor deficits.  (*Id.*)  Dr. Zakariyya assessed hypertension and urinary incontinence.  (*Id.*)  On December 15, 2014, Plaintiff complained of anxiety and that she was "unable to concentrate or persist at any job."  (T. 242.)  On examination Dr. Zakariyya noted "dependent edema" in her lower limbs, and no sensory or motor deficits.  (T. 242.)  Plaintiff was assessed with hypertension, anxiety/panic disorder, and urinary incontinence.  (*Id.*)  Dr. Zakariyya did not perform a mental status examination.  (*Id.*)  The record contains no objective medical imagining such as MRIs, diagnostic testing, or notations from specialists.

On July 29, 2013, Dr. Lorensen examined Plaintiff and provided a medical source statement.  (T. 230-233.)  Based on her examination, Dr. Lorensen opined Plaintiff had "moderate restrictions bending, lifting, and reaching."  (T. 233.)  The ALJ afforded Dr. Lorensen's opinion "considerable weight."  (T. 29.)  The ALJ stated that her RFC determination was supported by Dr. Lorensen's opinion and the objective medical evidence in the record.  (*Id.*)

Plaintiff argues that the ALJ's RFC determination, that Plaintiff could perform medium work, was not supported by substantial evidence in the record.  (Dkt. No. 9 at 8-9 [Pl.'s Mem. of Law].)  Specifically, Plaintiff asserts that the ALJ failed to explain how her RFC determination accounted for Dr. Lorensen's opinion that Plaintiff had moderate restrictions in bending, lifting, and reaching.  (*Id.*)  Of note, Plaintiff does not assert that she cannot perform the standing, walking, sitting, and other postural demands of medium work or as determined in the RFC.  Nor does Plaintiff assert that she cannot perform the basic mental demands of work.  For the reasons stated herein, the ALJ's

RFC determination, that Plaintiff could perform the lifting, bending, and reaching requirements of medium work, was not supported by substantial evidence.

To be sure, it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. June 30, 2016); *see Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010); *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015).

A consultative examiner's report which concludes that a plaintiff's condition is "mild" or "moderate," without additional information, does not allow an ALJ to infer that a plaintiff is capable of performing the exertional requirements of work. *See Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds; see Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (consultative examiner's opinion was "remarkably vague" and meaning was left to the ALJ's "sheer speculation"); *see Carrube v. Astrue,* No. 3:08-CV-0830, 2009 WL 6527504, at *8 (N.D.N.Y. Dec. 2, 2009) (remanding where consultative examiner's opinion on plaintiff's ability to lift weight, was so vague that the court "cannot fathom what might support the ALJ's conclusion that Plaintiff could lift and carry twenty-five to fifty pounds"), *report and recommendation adopted by,* 2010 WL 2178499 (N.D.N.Y. May 28, 2010).

However, although a consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's

opinion useless in all situations. *Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014) ("[W]hether an [ALJ's] reliance on a consultative examiner's vague opinion is reversible error is contextual rather than *per se*. Reviewing courts must weigh the impact of vague opinion in its unique factual circumstance.").

Courts have held that terms such as "mild" and "moderate" pass substantial evidence muster when medical evidence shows relatively little physical impairment. *Waldau v. Astrue,* No. 5:11-CV-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec.21, 2003); *Walker v. Astrue,* No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (finding that where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment); *see Tolhurst v. Comm'r of Soc. Sec.*, No. 5:15-CV-0428, 2016 WL 2347910, at *5 (N.D.N.Y. May 4, 2016) (holding that a consultative examiner's opinion was too vague to support a finding that plaintiff could perform sedentary work because the ALJ determined, at step two, that plaintiff suffered from back disorders, knee disorders, and Factor V Leiden; and therefore, plaintiff did not have relatively little physical impairments).

Further, courts have held that a consultative examiner's conclusion is not impermissibly vague where the conclusion is "well supported by his extensive examination." *Waldau*, 2012 WL 6681262, at *4; *Mauzy v. Colvin*, No. 5:12-CV-866, 2014 WL 582246, at *9 (N.D.N.Y. Feb. 13, 2014). Courts have also held that medical source statements from consultative examiners which provide vague language may be rendered "more concrete" by the facts in the underlying opinion and other opinion

10

evidence in the record. *Davis v. Massanari*, No. 00-CV-4330, 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001) (a consultative examiner's opinion was not too vague where "the facts underlying that opinion and the other medical opinions in the record lend it a more concrete meaning"); *see Sweeting v. Colvin,* No. 12-CV-0917, 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (plaintiff's contention that consultative examiner's use of the term "moderate" in his opinion was vague lacked merit as consultative examiner made specific findings based on physical examination of plaintiff); *Melton v. Colvin*, No. 13-CV-6188, 2014 WL 1686827, at *13 (W.D.N.Y. Apr. 29, 2014) (substantial evidence supported ALJ's RFC determination that plaintiff could perform sedentary work where consultative examiner opined plaintiff had moderate limitations in lifting and carrying and other objective evidence in the record to supported this determination).

Here, Dr. Lorensen's opinion alone was too vague to support the ALJ's RFC determination. The ALJ provided no evidence from the record to support Dr. Lorensen's opinion; and further, a careful review of the record reveals no evidence which could support the finding that Plaintiff could lift up to 50 pounds and frequent lift and carry 25 pounds. *See* 20 C.F.R. § 404.1567(c) (medium work required lifting no more than 50 pounds at a time with frequent lifting or carrying of object weighing up to 25 pounds).

In *Carrube*, an ALJ determined that a plaintiff could perform medium work based only on a consultative examiner's statement that plaintiff had a moderate limitation lifting. *Carrube*, 2009 WL 652704, at *2. The reviewing court determined the ALJ failed to explain what evidence supported the conclusion that the plaintiff could perform the lifting and carrying requirements of medium work, and that the record contained no evidence that the plaintiff could perform the lifting and carrying requirements of medium

11

work. *Id.* at *8. Here, as in *Carrube*, the ALJ failed to provide evidence in the record to support the determination that Dr. Lorensen's vague opinion supported the determination that Plaintiff could perform medium work. Further, a review of the record indicated that it contained no evidence that Plaintiff could perform the lifting and carrying requirements of medium work. Therefore, because the whole of the record provided no further insight or clarification regarding Plaintiff's ability to lift and carry, what Dr. Lorensen meant by "moderate restriction" was left to the ALJ's "sheer speculation" and remand is necessary. *See Selian,* 708 F.3d at 421.

For the reasons stated herein, Dr. Lorensen's opinion was too vague to support the conclusion that Plaintiff could perform the lifting and carry requirements of medium work, and for the same reasons, the opinion was also too vague to support the conclusion that Plaintiff could perform the bending and reaching requirements. Bending is frequently required in medium work. *See* SSR 83-14[4]. Reaching is broadly defined as extending arms and hand in any direction. DOT, App'x, C. The ALJ should also reassess Plaintiff's ability to bend and reach on remand.

Defendant, relying on SSR 85-15, asserts that the ALJ properly relied on Dr. Lorensen's opinion and such opinion supported the RFC for medium work because "where there is no physical impairment[] that limits exertion, the individual's occupational base is the entire span from sedentary to heavy work." (Dkt. No. 10 at 7 [Def.'s Mem. of Law].) SSR 85-15 applies to cases evaluating solely nonexertional

---

[4] "Two types of bending must be done frequently (from one-third to two-thirds of the time) in most medium, heavy, and very heavy jobs because of the positions of objects to be lifted, the amounts of weights to be moved, and the required repetitions. They are stooping (bending the body downward and forward by bending the spine at the waist) and crouching (bending the body downward and forward by bending both the legs and spine)." SSR 83-14.

impairments and specifically states that when a plaintiff has "*no medically determinable impairment* which limits exertion . . . the entire exertional span from sedentary work through heavy work – is reduced by the effects of the nonexertional impairment(s)." SSR 85-15 (emphasis added). Here, the ALJ determined that Plaintiff had a medically determinable impairment which limited exertion, namely "a slight limitation of motion in the lumbar spine." (T. 22.) Therefore, SSR 85-15 in inapplicable here because the ALJ determined that Plaintiff suffered from a medically determinable impairment that limited her exertional ability.

Of note, the ALJ determined at step two that Plaintiff suffered from the severe impairment of "a slight limitation of motion in the lumbar spine." (T. 22.) The ALJ's determination is somewhat baffling. Plaintiff never presented to her treating source with back complaints, Plaintiff never receive treatment for a back impairment, and Plaintiff's treating source never diagnosed Plaintiff with a back impairment. Dr. Lorensen diagnosed Plaintiff with "back pain." (T. 232.) Pain, however, is a symptom, not an impairment. *See* 20 C.F.R. § 404.1529; *see* SSR 96-4p ("Regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings."). To be sure, Dr. Lorensen noted reduced range of motion of the spine; however, Dr. Lorensen's findings regarding a diagnosis were therefore, like her source statement, vague. (T. 232.) It is unclear whether Dr. Lorensen concluded that Plaintiff suffered from a medically determinable back impairment; or, if Plaintiff merely suffered from the symptoms of back pain. Even assuming Dr. Lorensen determined

Plaintiff suffered from a back impairment, diagnosis alone does not render an impairment severe. The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue,* 514 F. App'x 18, 20 (2d Cir. 2013). As stated herein, Plaintiff did not complain of back pain to her treating source nor did she seek treatment for back pain. Therefore, the ALJ's step two determination should also be readdressed on remand.

On remand the ALJ will also need to make new findings related to step four and step five. A plaintiff will be found not disabled if it is determined that she has the RFC to perform: "[t]he actual functional demands and job duties of a particular past relevant job; or [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61. The ALJ determined at step four that Plaintiff was unable to perform her past relevant work as a quality assurance inspector. (T. 29.) However, the ALJ only addressed Plaintiff's past relevant work as actually performed and not as generally performed. The ALJ stated that she could not perform her past relevant work based on her testimony that she was required to lift up to 80 pounds 2-3 times per week. (*Id.*) Plaintiff testified that she routinely had to lift between ten and 15 pounds. (*Id.*) There is no finding of whether Plaintiff could perform her past relevant work as generally performed. Because remand is necessary for a proper RFC determination, the ALJ should also provide a more thorough assessment of Plaintiff's past relevant work at step four.

Overall, although a consultative examiner's opinion may constitute substantial evidence to support an ALJ's RFC determination, the opinion must nonetheless be supported by substantial evidence in the record and the ALJ's determination should contain an assessment of such evidence.  Here, the medical evidence in the record was either completely lacking or too sparse to help establish a more concrete characterization of the consultative examiner's opinion and to support the ALJ's RFC determination.  To be sure, Plaintiff's medical record is thin at best.  Despite a request for a statement, no treating source provided one and the record contains no objective imagining or comprehensive physical examinations.  Further, a non-examining State agency medical expert did not review Plaintiff's record regarding physical impairments.  Therefore, given the above factors, Dr. Lorensen's opinion alone was too vague to support the ALJ's RFC determination.  Because remand is necessary for a proper RFC determination, the ALJ should provide a more comprehensive analysis of Plaintiff's impairments at step two.  Further, due to the errors in formulating Plaintiff's RFC, the ALJ should provide a more detailed assessment of whether Plaintiff can perform her past relevant work as actually and generally performed.   The ALJ will also need to make new findings related to what other work Plaintiff retains the ability to perform in the national economy, should the evaluation proceed to that step.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No.9) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:     January 26, 2018

_____
William B. Mitchell Carter
U.S. Magistrate Judge